UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------

IN THE MATTER OF THE APPLICATION
OF THE UNITED STATES OF AMERICA
FOR AUTHORIZATION TO INTERCEPT WIRE
COMMUNICATIONS OCCURRING OVER THE
CELLULAR TELEPHONE BEARING ASSIGNED CALL
NUMBER 646-964-3580, INTERNATIONAL
MOBILE SUBSCRIBER IDENTITY NUMBER
("IMSI") 316010160550888, AND URBAN
FLEET MOBILE IDENTIFICATION NUMBER
("UFMI") 176*745*7216 (THE "TARGET
CELLPHONE")

APPLICATION FOR
ORDER AUTHORIZING
THE INTERCEPTION OF
WIRE COMMUNICATIONS

---------------------------------------

STATE OF NEW YORK         )
COUNTY OF NEW YORK        :  ss.:
SOUTHERN DISTRICT OF NEW YORK )

  AMIE N. ELY, an Assistant United States Attorney in the Southern District of New York, being duly sworn, states:

  1. I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7)--that is, an attorney authorized by law to prosecute or participate in the prosecution of offenses enumerated in Title 18, United States Code, Section 2516.

  2. Pursuant to the authority vested in him by Title 18, United States Code, Section 2516, by Order Number 3055-2009 of February 26, 2009, the Attorney General of the United States has specially designated appropriate officials of the Criminal Division to exercise the power conferred on him by Section 2516 of Title 18 of the United States Code to authorize applications for a Court Order authorizing the interception of wire communications. Under the power delegated by special designation

of the Attorney General, an appropriately designated official in the Criminal Division has authorized this application. A copy of that official's memorandum authorizing this application, as well as a copy of the Attorney General's Order designating that official, are attached to this application as Exhibit A.

    3. This application is for an Order, pursuant to Section 2518 of Title 18 of the United States Code, authorizing the interception and recording of wire communications of one or more of MANUEL GEOVANNY RODRIGUEZ, a/k/a "Shorty," a/k/a "Manny," OSMEL VAZQUEZ, a/k/a "Omel," RICHARD JIMENEZ-PEREZ, a/k/a "Milton Delgado," a/k/a "Javier Ramirez-Santiago," WILLIAM DELGADO, a/k/a "Mejor," ARIEL PENA, a/k/a "Bin, Vin," JOSE RAMON PEREZ, KENNETH PENA, LETICIA RAPOSO, a/k/a "Leti," a/k/a "La Rubia," DEYANIRA PAULINO-GOMEZ, a/k/a "Maritza Alvarez," STALIN DOMINGO GOMEZ, CYNTHIA MEDINA, ERICK NUNEZ, and others known and unknown (the "TARGET SUBJECTS"), occurring over a cellular telephone bearing assigned number 646-964-3580, International Mobile Subscriber Identification ("IMSI") 316010160550888, and Urban Fleet Mobile Identification ("UFMI") 176*745*7216 and subscribed in the name of "Prepaid Prepaid ," at "PO Box 55026, Irvine, CA 92619," and with service provided by SPRINT/NEXTEL (the "TARGET CELLPHONE"); and because of the possibility that the telephone numbers assigned to the TARGET CELLPHONE may change, any other telephone numbers accessed through the above-listed IMSI numbers for the

TARGET CELLPHONE, and any IMSI numbers accessed through the phone numbers assigned to the TARGET CELLPHONE.

4. I have discussed the circumstances of the above investigation with Special Agent Jason Samuels of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), who has participated in the investigation herein; I have examined Special Agent Samuels's affidavit submitted in support of this application (attached to this application as Exhibit B and incorporated by reference herein); and I therefore state, upon information and belief, that:

### Subjects and Offenses

(a) There is probable cause to believe that the TARGET SUBJECTS have committed, are committing, and will continue to commit the following offenses: offenses involving the importation, distribution of, and possession with intent to distribute controlled substances, the use of wire facilities to facilitate the same, conspiracy to do the same and attempts to do the same, in violation of Title 21, United States Code, Sections 841, 843, 846, 848, 856, and money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957 (the "TARGET OFFENSES").[1]

---

[1] In addition, although aiding and abetting is not a predicate offense under 18 U.S.C. § 2516, there is probable cause to believe that the TARGET SUBJECTS have aided and abetted and are aiding and abetting those substantive offenses, in violation of 18 U.S.C. § 2.

-3-

### Designated TARGET CELLPHONE

(b) There is probable cause to believe that certain of the TARGET SUBJECTS, during the period of interception applied for herein, will use the TARGET CELLPHONE in furtherance of, in connection with, to facilitate, to accomplish, and to commit the above-described offenses.

### Venue

(c) In connection with the telecommunications company that provides services to the TARGET CELLPHONE, all interceptions over the TARGET CELLPHONE will automatically be routed through New York, New York, and thus will first be heard in the Southern District of New York.

### Objectives

(d) There is probable cause to believe that the interception of wire communications, the authorization for which is sought herein, will help to reveal: (i) the nature, extent and methods of operation of the narcotics activities of the TARGET SUBJECTS; (ii) the identities of the TARGET SUBJECTS, their accomplices, aiders and abettors, co-conspirators, and participants in their illegal activities; (iii) the source, receipt, and distribution of narcotics, contraband, and money involved in those activities; (iv) the locations and items used in furtherance of those activities; (v) the existence and locations of records; (vi) the locations and sources of resources

-4-

used to finance their illegal activities; and (vii) the locations and disposition of the proceeds from and relating to those activities. In addition, these wire communications are expected to constitute admissible evidence of the commission of the above-described offenses.

### Other Investigative Procedures

(e) As set forth more fully in Exhibit B, normal investigative techniques have been tried and have failed or reasonably appear unlikely to succeed if tried.

### Prior Applications

(f) I have been informed that reviews have been done of the wire and electronic surveillance files of the Drug Enforcement Administration ("DEA"), ICE, and the Federal Bureau of Investigation ("FBI"). Based on that review, I have been informed that there have been no prior applications for court authorization to intercept, or approval of interception of, wire, oral, or electronic communications of the TARGET SUBJECTS or over the TARGET CELLPHONE, except as follows:

i. On or about May 27, 2009, Justice Bruce Allen of the Supreme Court of the State of New York, Special Narcotics Courts, County and City of New York, authorized the interception of wire communications over a telephone believed to be used by WILLIAM DELGADO, a/k/a "Mejor," which was assigned the call number 347-698-4735, and subscribed to in the name of

"Amarilis Delgado," at "77 Logan St., Fl. 2, Brooklyn, New York, 11208." Interception began on or about May 27, 2009, and was re-authorized by Justice Allen on or about June 25, 2009, on or about July 24, 2009, and on or about August 18, 2009. Interception ceased on or about September 18, 2009.

ii. On or about June 25, 2009, Justice Bruce Allen of the Supreme Court of the State of New York, Special Narcotics Courts, County and City of New York, authorized the interception of wire communications over a telephone believed to be used by RICHARD JIMENEZ-PEREZ, a/k/a "Milton Delgado," a/k/a "Javier Ramirez-Santiago," which was assigned the call number 347-898-4848, and subscribed to in the name of "MANNY MANNY," at "147 Autumn Ave., Brooklyn, New York, 11208." Interception began on or about June 25, 2009, and was re-authorized by Justice Allen on or about August 18, 2009. Interception ceased on or about September 18, 2009.

iv. On or about July 20, 2009, Justice Bruce Allen of the Supreme Court of the State of New York, Special Narcotics Courts, County and City of New York authorized the interception of wire communications over a telephone believed to be used by WILLIAM DELGADO, a/k/a "Mejor," which was assigned the call number 347-626-3964, and subscribed to in the name of "DEE DEE," at "P.O. Box 54988, Irvine, California, 92619." Interception began on or about July 20, 2009, and was re-

authorized by Justice Allen on or about August 18, 2009. Interception ceased on or about September 1, 2009.

     v. On or about October 8, 2009, Justice Bruce Allen of the Supreme Court of the State of New York, Special Narcotics Courts, County and City of New York, authorized the interception of wire communications over three additional telephones. The telephones were: first, one telephone believed to be used by JOSE RAMON PEREZ, which was assigned the call number 646-530-5454, and subscribed to in the name of "Selio Flores," at "P.O. Box 55026, Irvine, California, 92619;" second, one telephone believed to be used by ARIEL PENA, a/k/a "Bin, Vin," and KENNETH PENA, which was assigned the call number 646-302-7739, and subscribed to in the name of "YYYYY GGGG" at "P.O. Box 55026, Irvine, California, 92619;" and, third, one telephone believed to be used by WILLIAM DELGADO, a/k/a "Mejor," which was assigned the call number 646-302-7739, and subscribed to in the name of "DEE DEE," at "P.O. Box 54988, Irvine, California, 92619." Interception on each of these telephones began on or about October 8, 2009, and ceased on or about November 6, 2009.

     vi. On or about November 6, 2009, United States District Judge Deborah A. Batts of the United States District Court, Southern District of New York, authorized the interception of wire communications over a telephone believed to be used by OSMEL VAZQUEZ, a/k/a "Omel," which was assigned the

-7-

call number 305-796-8486 and, subscribed in the name of "Silenay Valdes," at "PO Box 54988, Irvine, CA 92619" ("VAZQUEZ CELLPHONE-5"), and a telephone also believed to be used by OSMEL VAZQUEZ, a/k/a "Omel," which was assigned the call number 305-796-1632, and subscribed in the name of "Pinde Venereo" at "5912 Southwest 11th Street, West Miami, FL 33144" ("VAZQUEZ CELLPHONE-7"). Interception on both phones began on or about November 6, 2009, and ceased on December 5, 2009.

       vii. On or about November 12, 2009, Justice Bruce Allen of the Supreme Court of the State of New York, Special Narcotics Courts, County and City of New York, authorized the interception of wire communications over two additional telephones. The telephones were: first, one telephone believed to be used by JOSE RAMON PEREZ, which was assigned the call number 786-412-7904, and subscribed to in the name of "Luis Enrique" at "PO Box 54988, Irvine, CA 92619"; second, one telephone believed to be used by KENNETH PENA, which was assigned the call number 347-321-5805 and subscribed to in the name of "YYYYY GGGG" at "PO Box 55026, Irvine, California, 92619." Interception on the telephone assigned call number 347-321-5805 began on or about November 12, 2009, and continues through the date of this affidavit. The telephone assigned call number 786-412-7904 was determined to no longer be active at around the time interception was to commence; accordingly, no calls have

been intercepted over that phone.  Interception of the phone assigned call number 347-321-5805 ceased on or about December 11, 2009.

          viii.  On or about November 16, 2009, United States District Judge John F. Keenan, Southern District of New York, authorized the interception of wire communications over a telephone believed to be used by OSMEL VAZQUEZ, a/k/a "Omel," which was assigned the call number 305-345-0580, and subscribed in the name of "Yenelis Jimenez," "PO Box 54988, Irvine, CA 92619" ("VAZQUEZ CELLPHONE-8").  Interception on the phone ceased on or about December 15, 2009.

WHEREFORE, I believe that probable cause exists to believe that the TARGET SUBJECTS, during the period of interception applied for herein, will use the TARGET CELLPHONE to communicate with each other and others as yet unknown, in connection with the commission of the above-described offenses. I further believe that, if the interception herein applied for is authorized by this Court, wire communications of the TARGET SUBJECTS concerning those offenses will be intercepted.

On the basis of the allegations contained in this application and on the basis of the attached affidavit of Special Agent Jason Samuels:

IT IS HEREBY REQUESTED that this Court issue an Order, pursuant to the power conferred on it by Section 2518 of Title 18

of the United States Code, authorizing officers and agents with ICE and other investigative and law enforcement officers, assisted, if necessary, by authorized translators, to intercept and to record wire communications of the TARGET SUBJECTS over the TARGET CELLPHONE until such communications are intercepted that fully reveal (i) the nature, extent, and methods of operation of the narcotics and money laundering business and activities of the TARGET SUBJECTS; (ii) the identities and roles of accomplices, aiders and abettors, co-conspirators, and other participants in their illegal activities; (iii) the receipt and distribution of contraband and money involved in those activities; (iv) the locations and items used in furtherance of those activities; (v) the existence and locations of records; (vi) the locations and sources of resources used to finance their illegal activities; and (vii) the locations and dispositions of proceeds from those activities — or for a period of thirty (30) days, whichever is earlier.

IT IS FURTHER REQUESTED, because of the mobility of portable cellular telephones, that the Order authorize the interception of wire communications within the Southern District of New York, and outside the jurisdiction but within the United States, pursuant to Section 2518(3) of Title 18, United States Code. In addition, it is requested that the Order authorize the interception of background conversations in the vicinity of the

TARGET CELLPHONE while the telephones is off the hook or otherwise in use.

IT IS FURTHER REQUESTED that the Order require its execution as soon as practicable after it is signed, and that interception be conducted in such a way as to minimize the interception of wire communications not otherwise subject to interception under Chapter 119 of Title 18 of the United States Code and terminate upon attainment of the authorized objectives, or, in any event, at the end of thirty (30) days. If the conversation is minimized, agents will spot check to insure that the conversation has not turned to criminal matters. The 30 days is measured from the earlier of the date on which investigative or law enforcement officers first begin to conduct interception under this Court's Order or ten days from the date of this Court's Order.

Monitoring of conversations must immediately terminate when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119 of Title 18, United States Code. Interception must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined that the conversation is criminal in nature. If a conversation is

-11-

minimized, monitoring agents may spot check to ensure that the conversation has not turned to criminal matters. It is further requested, pursuant to Section 2518(5) of Title 18 of the United States Code, that, in the event the intercepted communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception. Special attention will be given to minimize privilege communications.

IT IS FURTHER REQUESTED, pursuant to the provisions of Title 18, United States Code, Sections 2518(4), that it be ordered that Sprint/Nextel, the service provider for the TARGET CELLPHONE, and any other service provider for the TARGET CELLPHONE, furnish the technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with such services as those providers accord the persons whose communications are to be intercepted (including all dial digits, including all incoming and outgoing calls and pen register information, pursuant to Title 18, United States Code, Section 3121, et seq., and audio interception capability whether the cellular telephone is in roaming mode or otherwise). It is further requested that Sprint/Nextel, the service provider for the TARGET CELLPHONE, and any other service providers for the TARGET CELLPHONE, maintain service to the TARGET CELLPHONE for

the period of interception and any extensions thereto. The assistance of this provider is required to accomplish the objectives of the requested interceptions. Reasonable expenses incurred pursuant to this activity will be processed for payment by ICE.

IT IS FURTHER REQUESTED, because the need for contemporaneous information concerning the intercepted communications is especially important in the present investigation, that Sprint/Nextel, and any other service provider for the TARGET CELLPHONE, be ordered, under Title 18, United States Code, Sections 2703 and 3121 et seq., to provide originating and terminating cell site information for the TARGET CELLPHONE, by permitting access to such information.[2]

IT IS FURTHER REQUESTED, pursuant to Federal Rule of Criminal Procedure 41, that the Court issue an Order directing Sprint/Nextel to assist agents of ICE and other law enforcement agencies by providing all information, facilities and technical assistance needed to ascertain the physical location of the TARGET CELLPHONE, including but not limited to data indicating the specific latitude and longitude of (or other precise location

---

[2] In requesting cell site information, the Government does not concede that such cell site records – routinely retained by wireless carriers as business records – may only be obtained via a warrant issued on probable cause. See In re Application, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (authorizing prospective acquisition of cell-site records under combined authority of 18 U.S.C. 2703(d) & 3121 et seq.).

information concerning) the TARGET CELLPHONE (the "Requested Location Information"), for a period of thirty (30) days.

As explained in more detail in the Affidavit, there is probable cause to believe that the location of the TARGET CELLPHONE at times determined by investigators will constitute or lead to evidence of the TARGET OFFENSES.

In light of the above, the Government requests that this Court direct Sprint/Nextel to disclose the Requested Location Information concerning the TARGET CELLPHONE, and to initiate a signal to determine the location of the TARGET CELLPHONE on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the Order to Sprint/Nextel, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user(s) of the TARGET CELLPHONE, at any time of day or night, owing to the potential need to locate the TARGET CELLPHONE outside of daytime hours.

IT IS FURTHER REQUESTED that, pursuant to 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for a period of 30 days after the termination of the authorized period for acquisition of the Requested Location Information.

IT IS FURTHER REQUESTED that Sprint/Nextel, and any other service provider for the TARGET CELLPHONE, shall disclose to the United States and ICE, all published and non-published subscriber information and toll records and information relevant to this investigation, that is, all such information pertaining to the telephone numbers associated with telephones, digital display devices, and mobile telephones used, if any, which may be requested in furtherance of this investigation, within twenty-four hours of said request, there being reason to believe that the information sought is relevant and material to an ongoing criminal investigation.

IT IS FURTHER REQUESTED that any tracing operation and the use of Caller ID service for the TARGET CELLPHONE be without geographical limit.

IT IS FURTHER REQUESTED that, because of the possibility that the telephone number assigned to the TARGET CELLPHONE may change, interception is permitted of wire communications over not only the TARGET CELLPHONE, but also over any other telephone numbers accessed through the above-listed IMSI number for the TARGET CELLPHONE, and any IMSI numbers accessed through the phone number assigned to the TARGET CELLPHONE.

IT IS FURTHER REQUESTED that, in the event that the service provider changes during the course of the interception,

-15-

interception may continue with the new service provider without further order of this court. The United States will advise the Court of the change of service provider in the periodic progress reports submitted to this Court.

IT IS FURTHER REQUESTED that if the TARGET CELLPHONE is transferred outside the jurisdiction of this Court, such interception may take place in any other jurisdiction within the United States.

IT IS FURTHER REQUESTED that Assistant United States Attorney Amie N. Ely, or any other Assistant United States Attorney familiar with the facts of this case be ordered to cause to be provided to the Court a report on or about the tenth and twentieth days following the date of the Order or the date interception begins, whichever is later, showing what progress has been made toward the achievement of the authorized objectives and the need for continued interception. If any such reports become due on weekends or holidays, they should become due on or about the next business day thereafter.

IT IS FURTHER REQUESTED that no inventory or return of the results of the foregoing wire surveillance and interception need be made, other than the above-required reports, before 90 days from the date of the expiration of the Order, or any extension of the Order, or at such time as the Court in its discretion may require.

-16-

IT IS FURTHER REQUESTED that, upon an ex parte showing of good cause to a judge of competent jurisdiction, the services of the above inventory or return may be postponed for a further reasonable period of time.

IT IS FURTHER REQUESTED that, to avoid prejudice to this criminal investigation, Sprint/Nextel, and its agents and employees shall not disclose or cause the disclosure of the Order or the interception that it authorizes to any person other than those of its agents and employees who require said information to accomplish the interception of communications hereby ordered, and that, in particular, Sprint/Nextel, and its agents and employees shall in no event make such disclosure to the telephone user involved, or to any actual or potential interceptees.

IT IS FURTHER REQUESTED that this affidavit, as it reveals an ongoing investigation, be sealed until further Order of the Court in order to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the safety of agents and others.

_____
Amie N. Ely
Assistant United States Attorney
Southern District of New York
(212) 637-2214

Sworn to before me this
7th day of January, 2010

_____
HONORABLE GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF NEW YORK