UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

        v.                                              10- Cr- 905 (LTS)

MANUEL GEOVANNY RODRIGUEZ-
PEREZ, et al.,

                Defendants.
-----------------------------------------------------------X

## REPLY MEMORANDUM OF LAW

This Reply is submitted in response to the government's brief in opposition to Mr. Rodriguez's motion to suppress, omnibus motion and motion for a hearing regarding the possibility that a U.S. Marshal unlawfully entered and searched Mr. Rodriguez's apartment. We focus in Point One of this reply on Respondent's unsupported contention that Agent Samuels established the need to wiretap Mr. Rodriguez's phones because the use of any type of confidential informants or undercovers was unlikely to succeed if tried. Respondent is no more forthcoming than was Agent Samuels regarding whether more than one confidential informant was used during the investigation and, like Samuels, proffers nothing regarding the information that was provided by any confidential informants. Further, the explanations given by Samuels and reiterated by Respondent for why "flipped arrestees" or undercovers were never used during the investigation do not demonstrate

1

that these tools could not have been effective but, rather, that it was simply much easier and more convenient to use wiretaps. As such, necessity was not established.

We briefly address, in Point Two, Respondent's argument that this Court should deny Mr. Rodriguez's motion for a hearing regarding the U.S. Marshal who moved next door to Mr. Rodriguez during the investigation, after which Mr. Rodriguez believes that his lock was tampered with and his apartment searched. Respondent offers no information that might dispose of the question – not even an affidavit elucidating whether the marshal was aware of the investigation – yet states that the marshal's hearsay denial, in casual conversation with Mr. Rodriguez following the latter's arrest, of any involvement with the investigation, should end the inquiry. We submit that the Court should hold a hearing to properly explore the matter.

Point One

THE GOVERNMENT HAS FAILED TO ESTABLISH THAT
WIRETAPPING MR. RODRIGUEZ'S PHONES WAS NECESSARY,
RATHER THAN MERELY CONVENIENT, PARTICULARLY IN LIGHT
AGENT SAMUELS' FAILURE TO INFORM THE TITLE III COURT
OF WHAT A KNOWN INFORMANT HAD TO SAY ABOUT
MR. RODRIGUEZ

In our initial memorandum we urged that a finding of necessity was precluded by Agent Samuels' cryptic statement that the investigation "has not involved the use of confidential sources" even as Samuels admitted that

"a defendant in the Southern District of New York has provided information about" Rodriguez.  Samuels also suggested there might be *additional* confidential sources when he stated, "while photographs from surveillance may help *cooperating witnesses* identify members of the organization, the surveillance does not otherwise further the investigation if it is not accompanied by knowledge of the discussions of the individuals being surveilled." Samuels Aff. at ¶ 36 (emphasis added). As we explained (Initial Memo at 17-20), Samuels could not have established necessity where he did not even speak with the incarcerated defendant who was providing information about Rodriguez, as such information may well have been sufficient to obviate the need for electronic surveillance, or may have been of such a nature that it likely would have led the government to additional information that would have proved adequate.  Similarly, Samuels suggested there might be other informants but never explained who they are or what they had to say. Quite simply Samuels, for whatever reason, apparently chose to remain ignorant of what the incarcerated defendant told others in the government about Mr. Rodriguez, and thereby also left the Title III court in the dark as it was asked to consider the necessity of electronic surveillance.

3

In reply, Respondent asserts that any in-custody confidential informants to whom Samuels refers in his affidavit only had "historical" information and thus were "poor candidate[s] for active confidential informant status" (Resp. Br. at 31-32, 38).

Where, as here, the supporting affidavit does not identify for the Title III court the information a known informant has provided to the government, the government's argument becomes – absurdly – that *as a matter of law* no incarcerated informant can ever provide sufficient information to obviate the need for electronic surveillance in an ongoing, large scale drug investigation. Such a position is particularly bankrupt in the instant case, where Samuels, for all that appears, *himself* was ignorant of what information this source had provided and made no apparent attempt to enlighten himself (let alone the Title III court). The contention that "historical" information is necessarily insufficient is further undermined by Samuels' failure to inform the court just how "historical" the information is – it may have been a day old or a year old. Nor did Samuels inform the court of the informant's stature – was he someone with only minimal information or a veritable Pandora's Box? The Title III court never knew since Samuels never told it; *under such circumstances how could necessity possibly have been established?*

4

The government pretends it is "baffl[ed]" by our argument that Samuels failed to established necessity, Resp. Memo at 31, but we suggest that what is "baffling" is that Samuels would choose to remain ignorant of a known informant's information *regarding the very defendant under investigation* and not provide the Title III court any clue regarding the nature, scope and extent of this – or any other informant's – cooperation.

Relatedly, Samuels fails to adequately explain why the use of arrests in order to "flip" the arrestee could not have been a useful investigative tool. The reward of "flipping" an arrestee would have been yet another inside source that could have informed law enforcement of the ongoing activities of the targets. Samuels' explanation – merely reiterated by Respondent (Resp. Br. at 32) – that targets would be alerted to the investigation and modify their activities in a way that would "jeopardize" the investigation, was proven untrue on a number of occasions when, following arrests or the detection of surveillance by Mr. Rodriguez and others, the only modification made was the change of cell phones. Obviously, this did not imperil the investigation and neither Samuels nor Respondent identifies any other risk to the investigation. In fact, Samuels' feigned fear of a cooperator alerting others and thereby undermining the investigation is belied by the government's debriefing of the incarcerated defendant from whom the

5

government (though apparently not Samuels) extracted information about Rodriguez.

Likewise, Respondent echoes Samuels' assertion that an undercover would not be useful because the criminal organization is "so obviously sprawling and well-developed" that an undercover "would be able to glean, at best, only a snapshot of the Organization's activities and membership" (Resp. Br. at 32-33). This ignores the fact that undercovers and informants have been used successfully in all kinds of established, large-scale criminal investigations, including of drug organizations. It is by definition the difficult job of an undercover officer, or an informant, to penetrate a criminal organization's insularity and suspicion. Samuels and Respondent identify nothing unique about the so-called Rodriguez organization in that regard. What Samuels and Respondent are really saying is that it would be much easier and more convenient to use wiretaps than undercovers and informants. This may be true, but wiretaps are intended to be used with restraint and not "routinely employed as the initial step in criminal investigation." *United States v. Giordano*, 416 U.S. 505, 515 (1974). As the *Lilla* court states:

> The requirement of a "full and complete statement" regarding procedures attempted or considered prior to the application for a wiretap serves both to underscore the desirability of using less intrusive procedures and to provide courts with some indication

6

of whether any efforts were made to avoid needless invasion of privacy. Like other courts, we reject generalized and conclusory statements that other investigative procedures would prove unsuccessful.

*United States v. Lilla*, 699 F.2d 99, 104 (2d Cir. 1983)(citations omitted).

In short Agent Samuels, through his own omissions and coyness failed to establish the necessity for electronic surveillance and all such surveillance and its fruits therefore should be suppressed.

Point Two

THE COURT SHOULD HOLD A HEARING TO DETERMINE WHETHER A U.S. MARSHAL UNLAWFULLY ENTERED AND SEARCHED MR. RODRIGUEZ'S APARTMENT

Respondent argues that, because the U.S. Marshal whom Mr. Rodriguez suspects of having entered his apartment unlawfully in connection with the investigation, not surprisingly, denied having done so, Mr. Rodriguez is not entitled to a hearing. Respondent offers no information to counter Mr. Rodriguez's suspicions, set forth in his affidavit – indeed, does not even provide its own affidavit regarding whether the Marshal had any involvement in the investigation – but simply asks this Court to accept the hearsay denial of the marshal without any further inquiry.

The Court should not hold Mr. Rodriguez to a prohibitively high standard before granting him a hearing; short of catching the marshal on camera (and there were none on Mr. Rodriguez's floor as far as we know),

7

there was little Mr. Rodriguez could do to prove his suspicions that his door had been tampered with and his apartment entered by this Marshal. It is certainly possible that the fact that the marshal moved next door to Mr. Rodriguez shortly after Mr. Rodriguez moved in, and moved out just before his arrest, and that Mr. Rodriguez's door was tampered with during that time period, was merely a coincidence. But any hint of possible impropriety should be formally explored in a hearing, not rejected out of hand.

## Conclusion

For the reasons set forth above and in Mr. Rodriguez's initial briefs, this Court should grant Mr. Rodriguez's motions in their entirety.

Dated:      New York, New York
            May 23, 2012

Respectfully submitted,

Richard Levitt
Levitt & Kaizer
40 Fulton Street, 23rd Floor
New York, New York  10038
(212) 480-4000
*Attorneys for Manuel Rodriguez*

On the brief:
Richard Ware Levitt
Yvonne Shivers