UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

   -v-                                                                                     No. S38 10 CR 905-LTS

MANUEL GEOVANNY Rodriguez-PEREZ,
      a/k/a "Manuel Rodriguez,"
      a/k/a "Andres Garcia,"
      a/k/a "Manny,"
      a/k/a "Shorty,"
      a/k/a "El Monstro,"

        Defendant.

-------------------------------------------------------x

DANIEL PERLA and BINYAN OR, LLC,

        Third-Party Claimants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        In conjunction with his guilty plea to the above-captioned indictment, Manuel Geovanny Rodriguez-Perez ("Defendant") and the Government agreed to a Consent Preliminary Order of Forfeiture (Docket Entry No. 1839), which was entered by the Court on June 7, 2016. Pursuant to this order, Defendant agreed to forfeit his right, title, and interest in several properties, including 62 East 131 Street, New York, New York (the "Subject Property"), as to which the operative indictment alleged that the United States was entitled to forfeiture of all land, buildings, and appurtenances as proceeds of Defendant's crimes. Binyan Or, LLC ("Binyan Or") and Daniel Perla, a member of Binyan Or (collectively, "Petitioners"), allege that Binyan Or is the assignee of a promissory note, which is currently in default, secured by a mortgage on the Subject Property that has also been assigned to Binyan Or. Petitioners have

filed a petition ("Petition," Docket Entry No. 1975) with the Court seeking to commence an ancillary proceeding to adjudicate the validity of Binyan Or's alleged interest in the Subject Property pursuant to Federal Rule of Criminal Procedure 32.2(c)(1) and 21 U.S.C. section 853(n) ("Section 853(n)"). The matter is now before the Court on the Government's motion, pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(A), to dismiss the Petition.

The Court has considered the parties' submissions and oral arguments carefully and, for the following reasons, denies the Government's motion to dismiss the Petition in part, and grants it in part.

## BACKGROUND[1]

The previous owner of the Subject Property, Disoni LLC ("Disoni"), granted a mortgage[2] in favor of Alfred Groner, dated December 1, 2006, and recorded on January 24, 2007, to a secure a $450,000 promissory note. (Petition ¶ 9; Mortgage between Disoni and Groner, CRFN 2007000043397, Docket Entry No. 1975-2.) On November 5, 2009, 62 East Realty Corp. ("62 East"), a New York corporation of which Defendant was a principal, took title from Disoni and assumed Disoni's obligations under the mortgage held by Groner, pursuant to an assumption and modification agreement recorded on November 18, 2009. (Petition ¶¶ 4, 10, 11; Mortgage Modification and Assumption Agreement, CRFN 200900377528, Docket Entry No. 1975-3.) 62 East delivered a promissory note to Groner in the reduced sum of $350,000, as

---

[1] Because a motion to dismiss a third-party petition in an ancillary proceeding is examined by the Court according to the same principles as a civil motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts all factual allegations in the Petition as true for the purposes of this motion practice. United States v. Egan, 811 F. Supp. 2d 829, 832-33 (S.D.N.Y. 2011).

[2] In considering a motion to dismiss, a court may consider documents attached to or incorporated by reference in the petition. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

specified by the assumption and modification agreement. (Petition ¶ 10; Promissory Note between 62 East and Groner dated November 5, 2009, Docket Entry 1975-1.)

On October 5, 2010, Defendant was "arrested and charged in a one-count Indictment S1 10 Crim. 905 with conspiracy to distribute and possess with intent to distribute a controlled substance." (Mem. of Law in Sup. of the Government's Mot. to Dismiss the Petition of Perla and Binyan Or ("Government Mem."), Docket Entry No. 2046, at 1; Indictment S1 10 Crim. 905, Docket Entry No. 25.) This indictment included an allegation that the Subject Property was forfeitable as proceeds of Defendant's alleged crime. (Indictment S1 10 Crim. 905 ¶ 4(b).) On October 15, 2010, the Government filed a notice of pendency with the Clerk of New York County, providing public notice that the Government was seeking forfeiture of the "real property and appurtenances thereto known generally as 62 East 131st Street, New York, New York."[3] (Notice of Pendency dated October 14, 2010, Docket Entry No. 2067-1 (document stamped by the New York County Clerk's Office 9:08 a.m., October 15, 2010).)

In exchange for $400,000, Groner assigned the mortgage and note to Binyan Or by an assignment dated August 11, 2011,[4] and recorded January 26, 2015. (Petition ¶ 12; Assignment of Mortgage between Groner and Binyan Or ("Assignment of Mortgage"), CRFN 201500028886, Docket Entry No. 1975-4.)

---

[3] The Court takes judicial notice of the notice of pendency, a copy of which was tendered by the Government in its reply papers, as a publicly filed document. See Estate of Leventhal ex rel. Bernstein v. Wells Fargo Bank, N.A., No. 14 CIV. 8751 ER, 2015 WL 5660945, at *4 (S.D.N.Y. Sept. 25, 2015).

[4] Although the Petition includes an allegation that the assignment was effected on November 5, 2009, the paperwork tendered by Petitioner is dated August 11, 2011, and Petitioners argue in their opposition to the motion that the mortgage was assigned on August 11, 2011. Accordingly, the Court treats August 11, 2011, as the relevant date. (Petition ¶ 12; Assignment of Mortgage.)

On March 24, 2014, Defendant was "was charged in a forty-eight count superseding Indictment S38 10 Crim. 905 . . . with a variety of criminal offenses including racketeering, narcotics conspiracy, and tampering with a witness." (Government Mem. 1-2.) The Superseding Indictment also included allegations that Defendant's interests in the Subject Property and other real property were forfeitable pursuant to 18 U.S.C. sections 981(a)(1)(A), 982(a)(1)(A), and 1963(a), 21 U.S.C. section 853, and 28 U.S.C. section 2461. (Indictment S38 10 Crim. 905, Docket Entry No. 1434, ¶¶ 166, (a), (b), (c)(i), 168, 170, 172.)

Binyan Or continues to hold the mortgage on the Subject Property and the associated promissory note and, after 62 East defaulted on the note, which was payable in full on November 4, 2010, instituted foreclosure proceedings in New York State Supreme Court, on or about July 12, 2015. (Petition ¶¶ 13-23, 25.) Binyan Or moved for and was granted a default judgment and a referee was thereafter appointed, by order dated December 16, 2016, to determine the amount due to Binyan Or pursuant to the note and mortgage. (Id. ¶ 28; Order of Reference, Binyan Or v. 62 East, Index Number 850224/2015 (Sup. Ct. N.Y. Cnty. Dec. 16, 2016), Docket Entry No. 1975-6.)

On or about June 7, 2016, Defendant pleaded guilty to a racketeering charge, and admitted the S38 Indictment's forfeiture allegation with respect to the Subject Property. (See Judgment in a Criminal Case, Docket Entry No. 1948.) At that time, the Court entered the above-referenced Consent Preliminary Order of Forfeiture with respect to his interests in several parcels of real property, including the Subject Property. (Consent Preliminary Order of Forfeiture as to Subject Property/Money Judgment ("Preliminary Forfeiture Order"), Docket Entry No. 1839, ¶ ii.). On June 29, 2016, 62 East was dissolved. (Petition ¶ 4.)

DISCUSSION

18 U.S.C. section 853(c) provides that all title, right, and interest in, inter alia, property that constitutes or is derived from proceeds of a crime vests in the United States upon commission of the act giving rise to forfeiture. Here, the Government contends that title to the Subject Property vested in the United States on November 5, 2009, when the Subject Property was purchased with proceeds of Defendant's crimes. As noted above, Defendant has executed and the Court has entered a consent order forfeiting Defendant's right, title, and interest in the Subject Property. (Preliminary Forfeiture Order ¶¶ ii, 2.) Petitioners, who are the assignees of a mortgage that burdened the Subject Property at the time Defendant acquired that property, seek, through an ancillary proceeding, to have the secured interest they assert in the Subject Property recognized as not subject to forfeiture. (Petition at 8-9.) Petitioners contend that they are entitled to a modification of the forfeiture order to protect their security interest because they: (1) hold an interest in the Subject Property that was superior to Defendant's interest at the time the act giving rise to the forfeiture was committed, 21 U.S.C. § 853(n)(6)(A); and (2) because they were bona fide purchasers for value of that security interest, without "cause to believe that the [Subject Property] was subject to forfeiture," 21 U.S.C.S. § 853(n)(6)(B) (LexisNexis 2016).

An ancillary proceeding provides a procedural mechanism for a third party to assert, through the filing of a petition, its interest in the property of a criminal defendant that is subject to a preliminary order of forfeiture. Fed. R. Crim. P. 32.2(c)(1). A preliminary order of forfeiture becomes final with respect to the criminal defendant when entered, but it remains preliminary with respect to third parties asserting their interests until the conclusion of an ancillary proceeding to determine whether the preliminary forfeiture order must be modified to account for the rights of a petitioner. Id. 32.2(b)(4)(A), (c)(1), (c)(2). The Government may

move to dismiss the Petition for "lack of standing [or] for failure to state a claim," a motion that is adjudicated according to the same standards as a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss a civil complaint.  See Fed. R. Crim. P. 32.2(c)(1)(A); see also Willis Mgmt. (Vt.), Ltd. v. United States, 652 F.3d 236, 241 (2d Cir. 2011).

Motion to Dismiss Standard

In determining whether a petitioner has set forth the "short and plain statement of the claim showing that [he is] entitled to relief" required by the Federal Rules of Civil Procedure (see Fed. R. Civ. P. 8(a)(2)), the Court looks to whether the allegations in the petition establish the "facial plausibility" of the petitioner's claims.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  "A claim has facial plausibility when the [petitioner] pleads factual content that allows the court to draw the reasonable inference" that the petitioner is entitled to relief from the forfeiture order under an applicable forfeiture statute.  Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)); see United States v. Lesak, No. 07-CR-0396 (GEL), 2009 WL 1788411, at *3 (S.D.N.Y. June 23, 2009) (applying precedent applicable to a civil motion to dismiss for failure to state a claim to a motion for dismissal of a petition brought pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(A)).  Such a showing "must be enough to raise a right to relief above the speculative level," requiring "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555 (internal quotation marks omitted).  In deciding a Federal Rule of Criminal Procedure 32.2(c)(1)(A) motion to dismiss, the Court assumes the truth of the facts asserted in the petition and draws all reasonable inferences from those facts in favor of the petitioner.  United States v. Egan, 811 F. Supp. 2d 829, 833 (S.D.N.Y. 2011).

"In adjudicating a motion to dismiss, a court may consider only the complaint [or petition], any written instrument attached to the complaint [or petition] as an exhibit, any statements or documents incorporated in it by reference, [any publicly filed document subject to judicial notice,] and any document upon which the complaint heavily relies." Geron v. Seyfarth Shaw LLP (In re Thelen LLP), 736 F.3d 213, 219 (2d Cir. 2013) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002)); see also Estate of Leventhal ex rel. Bernstein v. Wells Fargo Bank, N.A., No. 14-CV-8751 ER, 2015 WL 5660945, at *4 (S.D.N.Y. Sept. 25, 2015).

Section 853(n)(6)(A) Claim

The Government first moves to dismiss Petitioners' claim that it is entitled to recognition of its rights in the Subject Property under 21 U.S.C. Section 853(n)(6)(A). Section 853(n)(6)(A) provides relief to a petitioner who, by a preponderance of the evidence, demonstrates that:

> the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section.

21 U.S.C.S. §853(n)(6)(A) (LexisNexis 2016) (emphasis added). The creation and existence of a petitioner's property interest is determined through an examination of applicable state law, however, the "effect of that property interest—i.e., whether it satisfies the requirements of the federal forfeiture statute—is necessarily a matter of federal law." United States v. Speed Joyeros, S.A., 410 F. Supp. 2d 121, 125 (E.D.N.Y. 2006) (emphasis omitted). The statutory provision for relief as to a petitioner's vested or superior interest at the time of the commission of the act giving rise to the forfeiture of the subject property "works hand in hand with the 'relation-

back' doctrine embodied in § 853(c), which provides that all property subject to forfeiture based on a criminal offense 'vests in the United States upon the commission of the [offense].'" United States v. Watts, 786 F.3d 152, 166 (2d Cir. 2015) (quoting Section 853(c)). A superior interest may take the form of a senior "lien, mortgage, recorded security device, constructive trust, valid assignment, or the like." See United States v. Campos, 859 F.2d 1233, 1239 (6th Cir. 1988).

In Watts, the Second Circuit examined whether a petitioner who was assigned interests in bank accounts held an interest in the accounts superior to that vested in the Government, which claimed that the accounts were forfeitable as proceeds of a defendant's crime that commenced prior to the assignor's acquisition of its interest in the accounts. 786 F.3d at 166-69. The court stated that the date on which the petitioner's interest in the accounts originated should be determined by reference to the date on which the assignor acquired its interest because, under New York law, an assignee steps into the shoes of the assignor and may exercise any legal rights and defenses originally belonging to the assignor. Id. at 167 n.7; see also Dewees Mellor, Inc. v. Weise, No. 91 CV 2518 (ERK), 1993 WL 591608, at *6 (E.D.N.Y. Dec. 29, 1993) ("It is well established that an assignee will step into the shoes of the assignor, acquiring exactly what the prior mortgage holder had."). The ability to claim the assignor's acquisition date did not benefit the assignee in Watts, however, because the jury had found that the funds in the accounts were proceeds of the crime and thus forfeitable, and the assignor acquired the accounts after the relevant criminal conspiracy had commenced. The United States' interest in them thus had vested as of the moment the defendant's criminal activity commenced and before the assignor acquired its interest, defeating any possible claim by the assignee of a vested interest predating or superior to that of the United States. Watts, 786 F.3d at 167. The

Second Circuit's use of the assignor's acquisition date as the relevant benchmark for the purposes of Section 853(n)(6)(A) is nonetheless instructive here.

The Government argues that Section 853(n)(6)(A) protects only interests that were both vested or superior to the defendant's rights and held by the particular petitioner at the time the rights of the United States properly vested in the defendant's property pursuant to Section 853(c), and that the statute preempts any contrary principles of state law.[5] This interpretation is inconsistent with the plain language of the second prong of the statute, which focuses on the superiority of the interest to that of the defendant at the time of the crime, rather than on the identity of the holder of the interest at that time.[6] See United States v. Hooper, 229

---

[5]  At oral argument, the Government asserted that, as a matter of policy, Section 853(n)(6)(A) should be read to preclude protection of a third party's transfer of a lien interest in a defendant's property after the defendant committed the acts giving rise to forfeiture, because a criminal defendant could otherwise engineer a sham mortgage with a colluding lien holder who would wait until the defendant is arrested and then foreclose, taking "possession of property that's been forfeited to the government out from under the hands of the government." (Oral Arg. Tr., Docket Entry No. 2190, 6:14-7:3.) Such a manipulative scheme could not, however, succeed if the mortgage was granted after the defendant committed the act giving rise to forfeiture, because the lien interest would not have been superior at the relevant time. And, while it is not utterly inconceivable that a lienholder whose interest predated that of the defendant could somehow be in cahoots with the defendant, the statute renders only the defendant's relevant property (and its proceeds) forfeitable. Nothing would preclude the Government from seeking to establish that the lien interest held by the third party was in fact property of the defendant and therefore forfeitable. Nothing in the text of or the policy underlying Section 853(n)(6)(A) appears to require that innocent transferees of pre-existing interests that are not owned by the defendant be deprived of the opportunity to transfer those interests to other third parties without rendering the interests subject to forfeiture as property of the defendant.

[6]  The Court recognizes that, in Pacheco v. Serendensky the Second Circuit stated, without further explanation, that Section 853(n)(6)(A) cannot apply where a petitioner obtains her interest after the act giving rise to forfeiture. 393 F.3d 348, 353 (2d Cir. 2004). In that case the court went on to find, however, that the petitioner had stated a claim to an interest protectable under Section 853(n)(6)(B), and held that only a defendant's interest in real property (as opposed to the entire set of rights in the property, if others beside the defendant hold such rights) is forfeitable. Id. at 354-56. In Pacheco a defendant had

F.3d 818, 821 (9th Cir. 2000) (analyzing Section 853(n)(6)(A) as providing two alternative methods for petitioners to assert their interest).

The Government also asserted, at oral argument, that Section 853(n)(6)(A) should be limited to persons who themselves held superior interests prior to the act giving rise to forfeiture, while Section 853(n)(6)(B)'s bona fide prospective purchaser rule is the only available avenue for a petitioner who acquired an interest in the property after the act giving rise to forfeiture. Section 853(n)(6)(A)'s protection of superior interests is not, however, tied to the timing of the acquisition; it is available to the holder, or the assignee, of an interest superior to or

---

engaged in criminal activity from 1996 through October 2000, and used proceeds from this activity to acquire the defendant's interest in the subject real property. United States v. Serendensky, No. S2 00 CR. 320 (JGK), 2003 WL 21543519, at *2-3 (S.D.N.Y. July 9, 2003), vacated and remanded sub nom. Pacheco v. Serendensky, 393 F.3d 348 (2d Cir. 2004). The defendant and his wife purchased real property as joint tenants in 1998, with a mortgage. Id. at *2. The mortgage was refinanced by another bank in August 2000 but recorded in November 2000, after the defendant was indicted and a lis pendens was filed. The refinancing bank foreclosed and indirectly conveyed title to the petitioner. Id. at *2-3. Having reviewed the language of the forfeiture allegations in the indictment and the lis pendens filed by the Government, each of which spoke only of the defendant's interest in the property, and in light of its holding that Section 853 should be read to contemplate forfeiture of a partial interest in property in order to avoid potentially unconstitutional forfeiture of the property of innocent third parties, the court held that the petitioner had stated a claim for protection under Section 853(n)(6)(B) as a bona fide purchaser of the foreclosing bank's interest in the defendant's wife's share of the property. Pacheco, 393 F.3d at 355-56. The Pacheco circuit panel's conclusory statement that a post-crime acquiror of an interest in a property cannot invoke Section 853(n)(6)(A) is consistent with the rest of its analysis only as to property that is actually forfeitable (i.e., derived from an interest that is actually forfeitable by the defendant). The Second Circuit's express recognition that the Government's forfeiture rights extend only to the interest in real property that actually represents the proceeds of defendant's crime suggests that a transferee of an interest in that property that never belonged to the defendant and was not acquired with criminal proceeds would not be precluded from seeking protection under Section 853(n)(6)(A) of its rights in such interest, whether transferred before or after the commission of the crime that gave rise to the forfeiture of the defendant's interest.

separate from that held by the criminal defendant, whereas Section 853(n)(6)(B) is available to a petitioner who, without notice of the forfeiture, acquired the interest of the defendant after the Government's interest vested, or who acquired an otherwise inferior interest.  The Government's interpretation of Section 853(n)(6)(A) would lead to the incongruous result of allowing the holder of a pre-existing lien on a property subject to forfeiture, such as Groner, to retain a security interest in the property following the act giving rise to the forfeiture but would effectively bar him from alienating the interest.  Cf. Hooper, 229 F. 3d at 821 ("The intent of [Section 853(n)(6)(A)] was to prevent a defendant from defeating forfeiture by conveying title prior to conviction." (emphasis added)).

    Interpreting this statute to allow the Government to extinguish a pre-existing lien interest held by an innocent third-party that was never part of the property interest held by the criminal defendant raises constitutional takings issues that a court should seek to avoid in interpreting any ambiguity in the statute.  See Pacheco v. Serendensky, 393 F.3d 348, 354-55 (2d Cir. 2004) (resolving any ambiguity as to whether the property to be forfeited included the entire parcel or merely a defendant's interest therein so as to permit the partial forfeiture of real property, in part, to avoid deciding whether allowing a criminal defendant to forfeit the entire fee simple interest would deprive the successor of an innocent joint tenant (by foreclosure) of her property rights would constitute an unconstitutional taking); see also United States v. Sec. Indus. Bank, 459 U.S. 70, 75-78 (1982) (interpreting an ambiguous provision of the Bankruptcy Code to apply only prospectively in order to avoid the destruction of pre-existing liens and eliminating the need to consider the statute's constitutionality under the Takings Clause); cf. United States v. Schwimmer, 968 F.2d 1570, 1581 (2d Cir. 1992) (stating that in enacting 18 U.S.C. sections 1963(l)(6)(A) and (B), which are directly analogous to 21 U.S.C. Sections 853(n)(6)(A) and (B),

Congress intended that permitting petitioners to assert vested or superior property interests would "cover those cases where the Court lacks jurisdiction over the property because it is not really property of the defendant").

Here, the parties do not dispute that the act giving rise to forfeiture, and thus the trigger for vesting of Defendant's interest in the Government, was the transfer of the Subject Property from Disoni to 62 East on November 5, 2009. (See Government Mem. at 7.) Groner acquired his superior mortgage interest in the Subject Property on December 1, 2006, prior to 62 East's acquisition of the Subject Property. That pre-existing mortgage was explicitly recognized in connection with that transaction and was thus an interest superior to the interest acquired by 62 East.[7] Petitioners, as Groner's assignees, are entitled to assert the rights and defenses associated with Groner's superior interest. See Watts, 786 F.3d at 167 n.7. Accordingly, the Court finds that Petitioners have stated a plausible claim that they hold a mortgage interest in the Subject Property that was superior to that of Defendant at the time of the act giving rise to forfeiture.

Section 853(n)(6)(B) Claim

The Government also moves to dismiss Petitioners' claim that they are "a bona fide purchaser for value of the right, title, or interest in the property and [were] at the time of purchase reasonabl[y] [sic] without cause to believe that the property was subject to forfeiture." 21 U.S.C.S. § 853(n)(6)(B) (LexisNexis 2016). To assert a claim under this subsection, a

---

[7] At oral argument, the Government suggested that there might be grounds for suspicion concerning the integrity of Petitioners' mortgage interest, suggesting that it may be an artifice to keep the Government from acquiring the whole of the Subject Property, or may have another fraudulent purpose. It is inappropriate for the Court to consider such speculation at the motion to dismiss stage, in which the Court is bound to view all alleged facts in the light most favorable to Petitioners.

petitioner must establish that he had no "cause to believe that the property was subject to forfeiture" and that he qualifies as a bona fide purchaser under state law. 21 U.S.C.S. § 853(n)(6)(B) (LexisNexis 2016); see United States v. Jennings, No. 5:98-CR-418, 2007 WL 1834651, at *4-5 (N.D.N.Y. June 25, 2007) (examining whether a petitioner was a bona fide purchaser under state law and whether the petitioner had reason to know the property was subject to forfeiture under federal law).

Notwithstanding the notice of pendency stating that the Government was seeking forfeiture of the entire Subject Property, Petitioners contend that even had they actually received notice, they would reasonably have believed that only Defendant's interest in the Subject Property, but not the mortgage interest they acquired from Groner, was subject to forfeiture. While this line of argument might be relevant to whether Petitioners were reasonably without "cause to believe that the property was subject to forfeiture" under federal law,[8] the Court must first determine whether they qualified as bona fide purchasers under New York law. 21 U.S.C.S. § 853(n)(6)(B) (LexisNexis 2016); see Jennings, 2007 WL 1834651, at *4-5 (examining whether

---

[8] Petitioners cite United States v. Watts for the proposition that a petitioner may be without reason to know that property is subject to forfeiture if, based on an examination of the circumstances in the case, the petitioner had knowledge that plausibly indicated the property likely was not actually subject to forfeiture. 786 F.3d at 169-174. In Watts, a criminal defendant's employer conveyed an interest to the defendant's counsel in funds of which the Government also sought forfeiture. Id. at 157-58. The Court found that even though the forfeiture allegation in the indictment indicated a finding of probable cause and the petitioner-defense counsel knew that the Government was seeking forfeiture of the disputed funds, petitioner-counsel plausibly asserted that they were without reason to know that the funds were subject to forfeiture because the district court had found, prior to the conveyance of the interest to the petitioner, that the Government lacked probable cause to continue to restrain the funds. Id. at 169-74. Here, no judicial decision had undermined the significance of the forfeiture allegation in the indictment prior to the assignment of the Mortgage on the Subject Property.

a petitioner was a bona fide purchaser under state law and had reason to know the property was subject to forfeiture under federal law).

In New York, a bona fide purchaser for value "must have no [actual or constructive] knowledge of the outstanding lien and win the race to the recording office." Jenkins v. Stephenson, 745 N.Y.S.2d 30, 32 (App. Div. 2d Dep't 2002) (quoting Goldstein v. Gold, 483 N.Y.S.2d 375, 377 (App. Div. 2d Dep't 1984), aff'd, 66 N.Y.2d 624 (1985) (emphasis omitted). A notice of pendency filed pursuant to N.Y. C.P.L.R. art. 65 will serve as "constructive notice of litigation if [a purchaser] fails to record the deed prior to the filing of the notice of pendency." Goldstein, 745 N.Y.S.2d at 377. N.Y. C.P.L.R. section 6501 provides that a "person whose conveyance or incumbrance is recorded after the filing of the notice is bound by all proceedings taken in the action after such filing to the same extent as a party." A lis pendens notice will serve as constructive notice of a legal action for a period of three years after it is filed unless an extension is filed with good cause. N.Y. C.P.L.R. §§ 6501, 6513.

Here, Groner's assignment to Petitioners was executed almost a year after the Government filed its notice of pendency, which provided Petitioners with constructive notice, at the time of purchase, that the Government was seeking forfeiture of the entire parcel[9] of real property and appurtenances located at 62 East 131st Street.[10] See Tibby v. Fletcher, 788

---

9   The facts of this case are distinguishable from those in Pacheco, where the notice of pendency cited only the defendant's interest in the subject property, rather than, as here, the whole of the Property, and petitioner "won" the race to the recording office. 393 F.3d at 356.

10  Petitioners' proffer of a title search (Decl. of Jeffrey C. Daniels, Docket Entry No. 2057) conducted in May 2015 that did not reveal the Government's notice of pendency (which would previously have expired) is irrelevant to establishing constructive notice at the time of the assignment and is, furthermore, evidence extrinsic to the Petition that may not be considered in connection with a motion to dismiss. See Chambers, 282 F.3d at 153

N.Y.S.2d 430, 432 (App. Div. 3d Dep't 2004) (finding that a purchaser is charged with constructive notice of a lien that could have been ascertained by a title search at the time of purchase). Although the notice of pendency expired before Petitioners recorded the assignment in 2015, their delay of several years in recording does not relieve them of constructive notice of a document that would have been revealed through a title search at the time of their purchase. They were not bona fide purchasers for value within the meaning of New York law. Accordingly, the Court dismisses the Petition to the extent it is based on Section 853(n)(6)(B).

## Conclusion

For the foregoing reasons, the Government's motion to dismiss the Petition is granted with respect to Petitioner's claim pursuant to Section 853(n)(6)(B), but denied with respect to their claim under Section 853(n)(6)(A).

The parties shall appear for a pretrial conference before the undersigned on **January 23, 2019** at **10:30 a.m.** They shall meet and confer prior to the conference and, by **January 16, 2019**, file a joint status report specifying the factual issues in contention, any anticipated discovery and a schedule therefor, whether mediation would be helpful in settling the

---

(finding that a court may not consider documents not attached to or relied upon by the complaint unless they are subject to judicial notice).

matter, the procedural steps necessary to resolve this ancillary proceeding, and the anticipated length of any necessary trial.

        This Memorandum Opinion and Order Resolves Docket Entry No. 2045.

SO ORDERED.

Dated: New York, New York
       January 11, 2019

                                      /s/ Laura Taylor Swain
                                    LAURA TAYLOR SWAIN
                                    United States District Judge